UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL LEON POWELL,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:19-cv-627

Honorable Paul L. Maloney

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Majercyzk, Schultz, and Pallas.

**Discussion**

    **I.**    **Factual Allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon

County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan, the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, and the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the Michigan Department of Corrections (MDOC), ECF Mental Health Chief Brian Majercyzk, Psychologist Unknown Marshall, Nurse Jack Bellinger, Nurse Unknown Briske, Nurse Unknown Doane, Lieutenant Unknown Baker, Sergeant Nicholas Radamaker, Corrections Officer Unknown Schultz, and Hearings Officer D. J. Pallas.

Plaintiff alleges that at 7:45 p.m. on June 21, 2019, while he was being housed at the KCF, he was approached by several correctional officers who ordered him to place his hands behind his back so he could be handcuffed. Plaintiff was then escorted to the control center, where he was strip searched and placed in a holding cell. Shortly thereafter, Plaintiff was transferred to URF, where he was placed in a holding cell with another prisoner.

On June 25, 2019, Plaintiff was transferred to the ECF administrative segregation unit. Upon his arrival at ECF, Hearings Investigator Goodsped asked Plaintiff if he wanted to make a statement about the misconduct he had received. Plaintiff responded that he had not received a misconduct. Goodsped asked if that was his statement and Plaintiff stated that he was innocent.

On June 26, 2019, Plaintiff had a settlement conference before United States Magistrate Judge Ellen Carmody in Case No. 1:17-cv-82, during which he declined to dismiss his claims against Brian Majercyzk, Nicholas Radamaker, and Jessie Shelton. The Court notes that Majercyzk and Radamaker are also named as defendants in this case.

On June 27, 2019, Defendant Marshall interviewed Plaintiff regarding his treatment plan. Plaintiff asked if the plan could be updated to address his new security level. Defendant Marshall stated that Plaintiff was scheduled to see the treatment team in September, so his plan could remain in place until then. Plaintiff responded that his symptoms were getting worse since being in segregation and that his goal was to manage them in his current living situation. Defendant Marshall again refused.

On July 1, 2019, Plaintiff had a disciplinary hearing with Defendant Pallas. Plaintiff stated that he had never received a misconduct and did not know why he was in administrative segregation. Defendant Pallas read an assault and battery on an inmate misconduct, which had been written by Sgt. Formolo. Defendant Pallas told Plaintiff to write down any questions he wanted to ask Sgt. Formolo and adjourned the hearing. Plaintiff states that he never got his questions answered, nor did he have the opportunity to present evidence in his defense. On July 3, 2019, Defendant Pallas found Plaintiff guilty. The hearing report, which is attached to Plaintiff's complaint, states that there was surveillance video showing a prisoner, who was positively identified as Plaintiff, striking another prisoner in the head and chest. The prisoner who was assaulted during the incident was found to have puncture wounds. (ECF No. 1-1, PageID.20-21.)

On July 2, 2019, Plaintiff had a security classification committee (SCC) review. Assistant Deputy Warden Clause asked Plaintiff what had happened, and Plaintiff stated that he did not know. Resident Unit Manager McCary stated that he did not see anything in the computer on Plaintiff. Plaintiff told them that his misconduct hearing had been adjourned. Assistant Deputy Warden Clause indicated that they would lay Plaintiff in for 30 days and he was escorted back to his cell.

On July 11, 2019, Plaintiff had a videoconference with Dr. Fuller and Plaintiff complained that his mental health needs were not being met in administrative segregation. Dr. Fuller told Plaintiff that he was going to refer him for inpatient treatment. Later that day, Plaintiff was taken to a caged shower to meet with Defendant Marshall. Defendant Marshall asked Plaintiff what he had told Dr. Fuller, and Plaintiff shared the information. Defendant Marshall then told Plaintiff that he should have kept his mouth shut and would now be going to an observation cell. Plaintiff tried to explain to Officer Pike that Defendant Marshall was retaliating against him on behalf of Defendant Majercyzk, but Pike said that health care overrides unit officers in this type of situation. Plaintiff was then placed in an isolation/observation cell. Once in the isolation cell, Plaintiff only had a strap on gown and a blanket. The light was on twenty-four hours a day. Plaintiff was not given any tissue and could not flush the toilet. There was a camera in the cell and there were no other cells in the surrounding area.

On July 12, 2019, Defendant Marshall and Ms. Mucha came to the cell window and told him that he was going to be kept in the cell for the time being. Ms. Mucha told Plaintiff that she knew it was difficult, but that they were still consulting with some people. Plaintiff protested that he had not done or said anything to warrant his placement in an observation cell. Plaintiff stated that the observation cell was where he had heard voices the last time. Defendant Marshall said that Plaintiff just needed to get through the weekend and he would be released from observation on Monday. Plaintiff complained that when others were placed in an observation cell, they were released after twenty-four hours. Plaintiff asked why he was being treated differently, but Defendant Marshall and Ms. Mucha refused to answer. A little while later, Defendant Marshall came by Plaintiff's cell and told him that if she released him from observation and he tried to kill himself, she could be liable. Plaintiff said that he was in the observation cell when he tried to chew

4

through his wrist vein. Defendant Marshall said, "I know, but Majercyzk doesn't think it is a good idea."

Later that afternoon, Plaintiff suffered a psychotic break and attempted suicide by chewing into his left vein. Plaintiff was escorted from the observation cell and seen by Defendant Bellinger, who rinsed the wound with water and dressed it with a large band aid. Plaintiff claims that his vein was "partly coming out of his wrist." (ECF No. 1, PageID.7.) Plaintiff subsequently bit into the wound again and was treated by Defendant Doane, who rinsed the wound with water and applied a large band aid. Defendant Radamaker then ordered Plaintiff to be placed in a restraint chair. Approximately two hours later, Plaintiff told Sgt. Stone that the restraints were too tight and his wrist ached. Sgt. Stone stated that a nurse would be coming to do a restraint check shortly.

Later, when Defendant Radamaker came to his cell, Plaintiff asked to see the nurse because he was in pain. Defendant Radamaker asked Plaintiff if he was going to continue his suicidal behavior, but Plaintiff did not respond. Defendant Radamaker told Plaintiff that if he answered the question, he could see the nurse. Plaintiff said nothing. Defendant Radamaker then said "ok" and walked away. (*Id.*) At approximately 7:00 p.m., Plaintiff called for help. Defendant Radamaker responded to the call and Plaintiff asked to see Defendant Baker. When Defendant Baker arrived, Plaintiff asked if he could shower to wash the dried blood off, but Defendant Baker refused his request. Defendant Baker stated that the nurse would be around later to pass out the medication. Plaintiff then complained that the restraints were too tight and hurting his arms and wrists. Defendant Baker again stated that the nurse would be around soon.

At 9:00 p.m., Defendant Doane came to give Plaintiff his medication. Defendant Doane checked Plaintiff's restraints and had Defendant Radamaker loosen the shoulder restraints.

5

Defendant Doane left without checking or cleaning Plaintiff's bite wound. At midnight, Sgt. Mackey and Lt. Johnson removed Plaintiff from his restraints. For the next two days, Plaintiff felt better, was able to eat all his meals, and did not have any suicidal thoughts. Plaintiff did not sleep well on the night of July 14, 2019, because it was quite hot in his cell. On July 15, 2019, Defendant Marshall asked Plaintiff about his condition on July 12, 2019, and he stated that being in the observation cell made him hear things and hallucinate. Defendant Marshall explained that because Plaintiff had been in the restraint chair for eight hours, he was going to be kept in the observation cell for additional observation. Plaintiff protested that he did not need to be in observation and that it was not fair to keep him there when other inmates were released after one day. Plaintiff asked to speak to Defendant Majercyzk, but Defendant Marshall said that Defendant Majercyzk had already agreed to the continued detention. Defendant Majercyzk never came to the cell to speak with Plaintiff.

Plaintiff was released from the observation cell on July 16, 2019. Plaintiff asked Defendant Marshall if he could participate in a mental health program as recommended by the psychiatrist. Defendant Marshall said that Plaintiff's mental health issues were not appropriate for the program and that, as Plaintiff's caseworker, she understood his condition better than the psychiatrist did. Plaintiff believed that his continuing confinement in administrative segregation exacerbated his mental health issues and that Defendants Majercyzk and Marshall deprived him of appropriate mental health treatment.

On July 22, 2019, Plaintiff was taken to health care for treatment of the wound on his wrist and the bruises on his shoulders from being in the restraint chair. Defendant Briske told Plaintiff that he would not need health care if he did not bite himself. She also told him that he must have been "bucking" in the restraint chair to cause the bruising. (*Id.* at PageID.12.)

Defendant Briske stated that Plaintiff kept creating trouble for himself and that she would let the doctor know about Plaintiff's self-inflicted wounds. Defendant Briske indicated that the doctor might see him later in the week. Defendant Briske did not even give Plaintiff anything to clean and wrap his wound. Plaintiff was then taken back to his cell in administrative segregation.

Plaintiff claims that Defendants violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a). Plaintiff also asserts that Defendants retaliated against him and violated his Eighth Amendment rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. MDOC and Hearings Officer as Defendants

Initially, the Court notes that Plaintiff names the Michigan Department of Corrections as a Defendant in this case. Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the

Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Plaintiff does not assert any ADA or RA claims against the Michigan Department of Corrections. Therefore, the Court dismisses the Michigan Department of Corrections.

Defendant Pallas, who is a hearing officer, is also immune from suit in this case. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's allegations against Defendant Pallas concern his decision regarding the major misconduct that Plaintiff received while at KCF. Plaintiff does not assert any ADA or RA claims against Defendant Pallas. Accordingly, Defendant Pallas is absolutely immune from suit for damages under the circumstances of this case.

## IV. Eighth Amendment claims

Plaintiff claims that Defendants Marshall, Majercyzk, Briske, Doane, Bellinger, Baker, and Radamaker violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). This obligation includes medically necessary mental health treatment. *Id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle,* 429 U.S. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical

treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

11

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's complaint reveals that he was frequently seen by medical and mental health professionals and that there was an ongoing treatment plan. It is clear that Plaintiff did not agree with many of the decisions made by health care professionals, including the decision to place and keep him in an observation/isolation cell for more than twenty-four hours, the decision to place him in restraints, and with his treatment plan in general. However, as noted above, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. Plaintiff concedes

12

that he attempted suicide multiple times while in the isolation cell, which required his placement in restraints. The fact that Plaintiff was not released from observation immediately after he ceased attempting suicide does not indicate deliberate indifference. Therefore, the Court concludes that Plaintiff's Eighth Amendment claims against Defendants Marshall and Majercyzk are properly dismissed.

However, to the extent that Plaintiff alleges that Defendants Radamaker and Baker ignored his complaints that his restraints were too tight for several hours, which resulted in bruising to Plaintiff's shoulders, such allegations may rise to the level of deliberate indifference. The same is true for Plaintiff's contention that Defendants Bellinger, Doane, and Briske failed to properly treat the bite wounds, and merely rinsed them with water. Therefore, Plaintiff's Eighth Amendment claims against Defendants Radamaker, Baker, Bellinger, Doane, and Briske are not clearly frivolous and may not be dismissed on initial review.

## V. First Amendment retaliation

Plaintiff claims that Defendants Marshall and Majercyzk retaliated against him by having him placed in isolation/observation despite the fact that Plaintiff was not suicidal at the time of his placement. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that he believes Defendants Marshall and Majercyzk wanted to punish him for his pending lawsuit against Defendant Majercyzk, and that this was a motivating factor for his confinement in isolation/observation. Plaintiff's conduct in suing Defendant Majercyzk is protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). In addition, placement in isolation is an adverse action, *see Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) ("[R]estricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action."). However, Plaintiff has failed to show a causal connection between his placement in isolation/observation and the filing of his lawsuit against Defendant Majercyzk.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

> Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). Because Plaintiff has failed to allege any facts showing that his placement in an isolation/observation cell was

motivated by a desire to retaliate against him for filing a lawsuit on Defendant Majercyzk, this claim is properly dismissed.

Plaintiff also appears to be claiming that Defendant Marshall retaliated against him in violation of the First Amendment when she had him placed in an isolation/observation cell in order to punish him for telling Dr. Fuller, the psychiatrist, that his mental health needs were not being met and for seeking additional treatment. Plaintiff has a right to communicate with his doctor regarding his medical needs. As noted above, placement in an isolation/observation cell is adverse. Finally, Defendant Marshall's statement that Plaintiff should have kept his mouth shut and that he was going to the observation cell because he had talked to Dr. Fuller is sufficient to show a causal connection. Therefore, Plaintiff's First Amendment retaliation claim against Defendant Marshall for placing him in isolation/observation may not be dismissed on initial review.

## VI. ADA and RA claims

Plaintiff claims that Defendants Schultz, Marshall, and Majercyzk violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded

from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Initially, the Court notes that Plaintiff names Defendants Schultz, Marshall, and Majercyzk solely in their individual capacities. The Sixth Circuit squarely has held that an individual Defendant cannot be held personally liable under either the Rehabilitation Act's retaliation provision, 29 U.S.C. § 794, or the incorporated retaliation provision of the ADA, 42 U.S.C. § 12203. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). *See also Key v. Grayson*, 163 F. Supp. 2d 697, 704 (E.D. Mich. 2001) (citing *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *Van Hulle v. Pac. Telesis Corp.*, 124 F. Supp. 2d 642, 645 (N.D. Cal. 2000); *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 551-52 (D.N.J. 2000); *Kautio v. Zurich Ins. Co.*, No. 97-2411, 1998 WL 164623, at *1-2 (D. Kan. Mar. 18, 1998); *Cable v. Dep't of Developmental Servs.*, 973 F. Supp. 937, 943 (C.D. Cal. 1997)); *B.K. v. Lake Oswego Sch. Dist.*, No. 3:11-cv-278, 2012 WL 844222, at *3 (D. Or. Mar. 12, 2012) (citing cases). *Compare Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003) (reaching opposite conclusion for retaliation claims based on Title II discrimination), *with Albra v. Advan, Inc.*, 490 F.3d 826, 833-34 (11th Cir. 2007) (criticizing and limiting *Shotz* and holding that there is no individual liability for retaliation claims arising under Title I of the ADA). Therefore, Plaintiff's ADA and RA claims against Defendants Schultz, Marshall, and Majercyzk are properly dismissed.

Furthermore, even if Plaintiff had named Defendant Schultz in his official capacity, Plaintiff fails to allege sufficient facts to support an ADA or RA claim against him. Plaintiff states that Defendant Schultz violated the ADA when he wrote Plaintiff a misconduct ticket for biting into his own wrist. In order to state a claim under the ADA, Plaintiff must allege facts showing that he is a "qualified person," that he has a "disability," and that he received the misconduct ticket

on the basis of his disability. Given Plaintiff's assertion that he has long suffered from mental illness, the Court assumes that he has a disability for purposes of the ADA. Although Plaintiff fails to allege any specific facts regarding his claim against Defendant Schultz, he attaches a copy of the misconduct ticket. According to the ticket, Plaintiff refused a direct order to stop biting and scratching at his open wound. In the ticket, Defendant Schultz states: "From a distance of two feet away with direct eye contact prisoner Powell continued the self harm." (ECF No. 1-1, PageID.22.)

While writing a ticket for disobeying such a direct order might have been unreasonable given Plaintiff's mental illness, it does not appear that it was discriminatory in nature. Plaintiff refused a direct order and was given a ticket. There is no indication that Plaintiff was treated any differently from other prisoners because he is disabled. Neither the ADA nor the RA give disabled prisoners license to disobey orders from prison officials. *Barhite v. Brown*, No. 1:14-CV-218, 2014 WL 2918550, at *16 (W.D. Mich. June 26, 2014). Moreover, Plaintiff fails to allege that he suffered any actual harm as a result of the ticket, since Plaintiff fails to attach a copy of the hearing report or to specify whether he was found guilty of the ticket following a hearing. Therefore, because Plaintiff fails to allege facts showing that the misconduct ticket was discriminatory in nature, Plaintiff's claim against Defendant Schultz is properly dismissed.

Plaintiff claims that Defendants Marshall and Majercyzk violated the ADA when they kept him in an isolation cell on July 11, July 12, and July 15, 2019, in order to discriminate against him. However, according to the complaint, Plaintiff attempted suicide multiple times while in the isolation cell and had to be restrained in order to prevent him from chewing into the vein in his wrist. While Plaintiff might disagree with the decision to place him in the cell, he fails to allege any facts showing that the placement was discriminatory in nature.

Finally, Plaintiff alleges that Defendant Marshall denied him access to inpatient mental health treatment on the basis of his disability. However, beyond his conclusory allegations, Plaintiff has not set forth how inpatient mental health treatment was a necessary accommodation for his disability. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Majercyzk, Schultz, and Pallas will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's ADA and RA claims against Defendant Marshall. Plaintiff's Eighth Amendment claims against Defendants Radamaker, Baker, Bellinger, Doane, and Briske, and his retaliation claim against Defendant Marshall remain in the case.

An order consistent with this opinion will be entered.

Dated: November 6, 2019          /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 United States District Judge